**Gary W. Osborne (Bar No. 145734)**
**Dominic S. Nesbitt (Bar No. 146590)**
**Cheryl Dunn Soto (Bar No. 250892)**
OSBORNE & NESBITT LLP
501 West Broadway, Suite 1760
San Diego, California 92101
Phone: (619) 557-0343
Fax: (619) 557-0107
E-mail: gosborne@onlawllp.com

Attorneys for Plaintiff
ALIGN TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALIGN TECHNOLOGY, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL INSURANCE COMPANY, an Indiana corporation,<br><br>Defendant. | CASE NO. C08-04705 RMW<br><br>**PLAINTIFF ALIGN TECHNOLOGY, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING FEDERAL INSURANCE COMPANY'S "DUTY TO DEFEND"** |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on April 10, 2009 at 9:00 a.m., or as soon thereafter as counsel may be heard before the Honorable Ronald M. Whyte, in Courtroom 6 of the United States District Court, located at 280 S. First Street, San Jose, California, 95113, Align International, Inc. ("Align") will and hereby does move the Court for partial summary judgment regarding Federal Insurance Company's ("Federal") duty to defend.

As discussed more fully in the accompanying Memorandum of Points and Authorities, Align seeks partial summary judgment on its First Claim for Relief for Breach of Contract (Duty to Defend) based upon Federal's breach of its duty to defend Align against an underlying cross-complaint filed against it by a competitor called OrthoClear, Inc. ("OrthoClear").

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of  Randal L. Golden, the Appendix of Joint Exhibits on Cross-Motions for Summary Judgment or Partial Summary Judgment, the Stipulation Re Joint Exhibits on Cross-Motions for Summary Judgment or Partial Summary Judgment, and all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

**ISSUE TO BE DECIDED**

Whether partial summary judgment should be granted in favor of Align on its "First Claim For Relief" on the grounds that (1) Federal owed a duty to defend Align and others based on the allegations of slander and libel asserted against them in the underlying OrthoClear Cross-Complaint, and (2) Federal breached that duty.[1]

////

///

---

[1]    The OrthoClear Cross-Complaint also contained allegations triggering Federal's duty to defend under its coverage for "malicious prosecution."  However, the present motion only addresses Federal's duty to defend based upon OrthoClear's allegations of slander and libel.

1

1

# **TABLE OF CONTENTS**

2   I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3   II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4         A.   Align Technology, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5         B.   Federal's Primary Liability Policy and Its Coverage for Claims
              of Libel and Slander . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
6
          C.   Federal's Umbrella Policy and Its Coverage for Claims of Libel
7              and Slander . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8         D.   The Underlying OrthoClear Cross-Complaint and Its Allegations
              of Libel and Slander . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
9
          E.   Align's Tender of Defense and Federal Insurance Company's
10             Refusal to Defend . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11  III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

12        A.   Standard for Partial Summary Judgment of the Duty to Defend . . . . . . . . 6

13        B.   Orthoclear's Allegations of Defamation Fell Squarely Within
              the Insuring Agreements of Both the Primary and Umbrella Policies . . . . . 7
14
          C.   The Intellectual Property Exclusion in the Primary Policy
15             Did Not Eliminate All Potential for Covered Liability . . . . . . . . . . . . . . . 8

16             1.   Category One: Defamatory Publications Related Only to
                   Intellectual Property Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
17
               2.   Category Two: Defamatory Publications Related to Both
18                 Intellectual Property Rights and Non-Intellectual Property Matters 10

19             3.   Category Three: Defamatory Publications Not Related to
                   Intellectual Property Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
20
               4.   Category Four: Defamatory Publications Only Potentially Related
21                 to Intellectual Property Rights . . . . . . . . . . . . . . . . . . . . . . . . . . 12

22        D.   The Intellectual Property Exclusion in the Umbrella Policy Is Even
              Narrower Than the Exclusion in the Primary Policy; *A Fortiori*, It Did Not
23             Eliminate A Potential for Covered Liability . . . . . . . . . . . . . . . . . . . . . . . 13

24  IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

3   **Federal Cases:**

4   *Anthem Elecs., Inc. v. Pac. Emplrs. Ins. Co.,*
      302 F.3d 1049 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
5
   *Centillium Communs. v. Atl. Mut. Ins. Co.,*
6      528 F. Supp. 2d 940 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7   *Dogloo, Inc. v. Northern Ins. Co.,*
      907 F. Supp. 1383 (C.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
8
   *Downing v. Abercrombie & Fitch,*
9      265 F.3d 994 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

10  *KLA-Tencor Corp. v. Travelers Indemn. Co.,*
      2003 U.S. Dist. LEXIS 10456 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11, 12
11
   *Reese v. Travelers Ins. Co.,*
12     129 F.3d 1056 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

13

14  **State Cases:**

15  *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.,*
      100 Cal.App.4th 1017 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9
16
   *Buss v. Sup. Ct. (Transamerica Ins. Co.),*
17     16 Cal.4th 35 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18  *Gray v. Zurich Ins. Co.,*
      65 Cal. 2d 263 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8
19
   *Horace Mann Ins. Co. v. Barbara B.,*
20     4 Cal.4th 1076 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21  *MacKinnon v. Truck Ins. Exchange,*
      31 Cal. 4th 635 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
22
   *Maryland Casualty Co. v. National American Ins. Co.,*
23     48 Cal.App.4th 1822 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

24  *Mirpad LLC v. California Ins. Guarantee Ass'n,*
      132 Cal.App.4th 1058 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12
25
   *Montrose Chem. Corp. v. Sup. Ct.,*
26     6 Cal.4th 287 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

27  *North American Building Maintenance, Inc. v. Fireman's Fund Ins. Co.,*
      137 Cal. App. 4th 627 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
28

*Powerine Oil Co. v. Superior Court,*
   37 Cal. 4th 377 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Slaughter v. Friedman,*
   32 Cal. 3d 149 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Waller v. Truck Ins. Exchange, Inc.,*
   11 Cal. 4th 1 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Other:**

*California Practice Guide:  Insurance Litigation*,
   Hon. H. Walter Croskey, *et al.*, (The Rutter Group 2008) . . . . . . . . . . . . . . . . . . . . . . . 1

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.      <u>INTRODUCTION</u>**

3

     This motion presents a question already answered by this Court in *KLA-Tencor*

4

*Corp. v. Travelers Indemn. Co.*, 2003 U.S. Dist. LEXIS 10456 (N.D.Cal. Apr. 11, 2003):

5

Whether a liability insurer may properly disclaim a duty to defend based upon an

6

intellectual property exclusion which excludes <u>only some</u> of the defamation allegations in

7

the underlying lawsuit filed against its insured? The answer, not surprisingly, is that it

8

cannot.

9

     Federal Insurance Company ("Federal") issued a primary liability insurance policy

10

to Align Technology, Inc. ("Align") promising to defend lawsuits which, *inter alia*,

11

sought damages for slander or libel. Federal also issued to Align a commercial excess

12

and umbrella insurance policy covering slander and libel claims.[2] During the term of

13

these two policies, Align and several of Align's officers, directors and employees were

14

sued by a competitor, OrthoClear, Inc. ("OrthoClear"), by means of a cross-complaint

15

filed in state court ("the OrthoClear Cross-Complaint"). OrthoClear alleged that Align

16

and the individual cross-defendants had published statements – on different dates, to

17

different persons, and concerning different subject matters – which libeled and/or

18

slandered OrthoClear.

19

     Align tendered the OrthoClear Cross-Complaint to Federal for a defense, and

20

Federal responded by denying Align's claim. Although Federal conceded that the slander

21

and libel claims fell within the scope of its policies' insuring provisions, it contended that

22

"Intellectual Property Laws or Rights" exclusions (hereinafter "Intellectual Property

23

Exclusion") in both policies eliminated all potential for covered liability.

24

///

25

///

26

27

    [2] An "umbrella" policy provides "primary" coverage (with consequential duties to indemnify and defend) for claims not covered by underlying insurance. *See* Croskey, *et al.*, Cal.

28

Practice Guide: Insurance Litigation, 8:210; *see also Powerine Oil Co. v. Superior Court*, 37 Cal. 4th 377, 398-99 (2005).

1    Federal's coverage disclaimer was erroneous.  While some of the defamatory

2  publications allegedly made by Align and the individual cross-defendants did include

3  intellectual property content, there were other alleged publications made by Align and the

4  individual cross-defendants which clearly did not.  For example, at paragraph 53 of

5  OrthoClear's Cross-Complaint, Align was alleged to have issued a memorandum which

6  grossly misrepresented the value of stock options which OrthoClear had promised its

7  employees.  The injuries which OrthoClear may have proven as a consequence of

8  allegedly false publications such as this one fell outside the scope of the Intellectual

9  Property Exclusions in both policies, and created a clear potential for covered liability.

10  Align, therefore, respectfully requests a ruling that Federal breached its duty to defend.

11  **II.    STATEMENT OF FACTS**

12       **A.    Align Technology, Inc.**

13    Align was founded in 1997 and is based in Santa Clara, California.  Align's core

14  product is a system for straightening teeth through the use of clear removable orthodontic

15  appliances called "aligners."  This product is called the "Invisalign System" and is used

16  primarily to treat adults and older teenagers.  Align markets the "Invisalign System"

17  directly to dentists and orthodontists.  *See* Declaration of Randal L. Golden ("Golden

18  Decl."), ¶2.

19       **B.    Federal's Primary Liability Policy and Its Coverage for Claims of Libel**

20           **and Slander**

21    Federal issued a primary liability policy to Align, policy no. 3536-44-70, for the

22  period April 1, 2004 to April 1, 2005.  *See* Appendix of Joint Exhibits[3] ("*App. Ev.*"), Exh.

23  5 at 324-325.  This primary policy extended coverage both to Align and to Align's

24  directors, officers, and employees.  *App. Ev.*, Exh. 5 at 330.

25  ///

26

27       [3]    The parties have stipulated to the authenticity and admissibility of the eleven
28  documents attached to the Appendix of Joint Exhibits.  *See* Stipulation Re Joint Exhibits filed
   herewith.

Pursuant to this policy, Federal promised Align a defense and indemnity against third-party lawsuits alleging claims of libel and slander.  Specifically, the policy promised:

> [W]e will pay damages that the **insured** becomes legally obligated to pay by reason of liability: imposed by law . . . for . . . **personal injury** to which this coverage applies.

*App. Ev.*, Exh. 5 at 327.

Federal further promised:

> [W]e will have the right and duty to defend the **insured** against a **suit**, even if such **suit** is false, fraudulent or groundless.

*App. Ev.*, Exh. 5 at 328.

The policy defined "**suit**" in relevant part as "a civil proceeding in which damages, to which this insurance applies, are sought."  *App. Ev.*, Exh. 5 at 355.

"**Personal injury**" was defined to include:

> [I]njury . . . caused by an offense of:
>
> . . .
>
> D.    electronic, oral, written or other publication of material that:
>
> > 1.    libels or slanders a person or organization (which does not  include disparagement of goods, products, property or services);

*App. Ev.*, Exh. 5 at 353-354.

The policy contained an Intellectual Property Exclusion stating that the policy did not apply to "**personal injury**" (*i.e.*, injury caused by the publication of material that libels or slanders) arising out of, giving rise to or in any way related to the "assertion," "infringement," or "violation" of any intellectual property law or right.  *App. Ev.*, Exh. 5 at 340.

## C.    <u>Federal's Umbrella Policy and Its Coverage for Claims of Libel and Slander</u>

Federal also issued to Align a commercial excess and umbrella policy, policy no. 7972-56-62, for the period April 1, 2004 to April 1, 2005.  *App. Ev.*, Exh. 6 at 358-401.

The "Umbrella Coverage B" part of this policy provided primary coverage, including a duty to defend and indemnify, for claims not covered by underlying insurance. *App. Ev.*, Exh. 6 at 363-364.

Like Federal's primary policy, Umbrella Coverage B promised Align and its directors, officers, and employees a defense and indemnity against third-party lawsuits alleging claims of libel and slander. Specifically, this policy promised:

> [W]e will pay, on behalf of the **insured**, **loss** because of liability:
>
> - imposed by law;
>
> . . .
>
> for . . . **personal injury** to which this coverage applies.

*App. Ev.*, Exh. 6 at 363.

Federal further promised:

> [W]e will have the right and duty to defend the **insured**:
> . . . under Umbrella Coverage B, against a **suit** to which such coverage applies, even if such suit is false, fraudulent or groundless.

*App. Ev.*, Exh. 6 at 364.

The policy defined "**suit**" in relevant part as "a civil proceeding in which damages, to which this insurance applies, are sought." *App. Ev.*, Exh. 6 at 390.

"**Personal injury**" was defined to include:

> [I]njury . . . caused by an offense of:
>
> . . .
>
> D.   electronic, oral, written or other publication of material that:
>
> 1.   libels or slanders a person or organization (which does not include disparagement of goods, products, property or services);

*App. Ev.*, Exh. 6 at 386.

This policy also contained an Intellectual Property Exclusion which was a different version of the one appearing in the primary policy. This modified version stated that the

policy did not apply to "liability or loss, cost or expense" (underscore added) arising out of, giving rise to or in any way related to the "assertion," "infringement," or "violation" of any intellectual property law or right.  *App. Ev.*, Exh. 6 at 393.

### D. The Underlying OrthoClear Cross-Complaint and Its Allegations of Libel and Slander

OrthoClear was founded by several former Align employees to manufacture and market a line of clear removable orthodontic aligners in direct competition with Align's "Invisalign System."  In February 2005, Align initiated a lawsuit against OrthoClear in the Superior Court of the State of California, County of San Francisco, entitled *Align Technology, Inc. v. OrthoClear, Inc., et al.*, and assigned Case No. CGC-05-438361.  *See* Golden Decl., ¶4; *App. Ev.*, Exh. 1.

On February 15, 2005, OrthoClear and seven individuals associated with it filed a 46-page cross-complaint against Align, as well as a number of its directors, officers and employees.  *App. Ev.*, Exh. 2.  OrthoClear alleged that the Align defendants had slandered, libeled, maligned and besmirched OrthoClear by publishing false and defamatory statements to Align's employees, the orthodontic and investment community, and the general public.   The OrthoClear Cross-Complaint specifically included causes of action for both "Defamation (Libel)" and "Defamation (Slander)" and sought damages under both of these causes of action.  *App. Ev.*, Exh. 2 at ¶¶104-113.  While some of the alleged defamatory publications included statements relating to intellectual property, others clearly did not.  For example, OrthoClear alleged that on February 5, 2005, Align issued a memorandum which "grossly misrepresented the value of the stock options OrthoClear had promised."  *App. Ev.*, Exh. 2 at ¶53.  As another example, OrthoClear alleged that on dates unspecified, Align and its key management "made deliberate and wrongful public statements that OrthoClear has 'recruited its entire sales force' and 'unlawfully' solicited Align employees, when they knew such statements to be false."  *Id.* at ¶83.  As yet another example, OrthoClear alleged that on February 2, 2005, an Align

///

1   employee called a former Align employee and told her former colleague that she "'was

2   being misled'" and that "'she was being made false promises.'"  *Id*. at ¶35.

3          E.     **Align's Tender of Defense and Federal's Refusal to Defend**

4          On February 17, 2005, Align tendered the OrthoClear Cross-Complaint to Federal

5   for a defense.  *See* Golden Decl., ¶6; *App. Ev.*, Exh. 7.  Approximately three weeks later,

6   on March 10, 2005, Federal responded to Align's tender by denying that the OrthoClear

7   Cross-Complaint raised any potential for liability covered by its policies.  *App. Ev.*, Exh.

8   8.  While acknowledging that the allegations of slander and libel fell within the policies'

9   definitions of "**personal injury**," Federal contended in its March 10, 2005 denial letter

10  that the Intellectual Property Exclusions in both its policies eliminated any potential for

11  covered liability.[4]  *App. Ev.*, Exh. 8 at 408.

12  **III.   ARGUMENT**

13         A.     **Standard for Partial Summary Judgment of the Duty to Defend**

14         Under California law, "a liability insurer owes a broad duty to defend its insured

15  against claims that create a potential for indemnity."  *Horace Mann Ins. Co. v. Barbara*

16  *B.*, 4 Cal.4th 1076, 1081 (1993); *see also Montrose Chem. Corp. v. Sup. Ct.*, 6 Cal.4th

17  287, 295 (1993).  An insurer is only excused of this duty if the underlying complaint

18  "'can by no conceivable theory raise a single issue which would bring it within the policy

19  coverage.'"  *Montrose*, 6 Cal.4th  at 300 (quoting *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263,

20  276 n.15 (1966)).  Furthermore, the claims as to which there is a potential for coverage

21  need not predominate the underlying lawsuit.  *Horace Mann*, 4 Cal.4th at 1084.  If even a

22  single claim in a multi-count complaint is potentially covered, the insurer

23

24         [4]     In addition to the Intellectual Property Exclusion, Federal's March 10, 2005 denial
       letter also cited several other exclusions. *App. Ev.*, Exh. 8 at 408. Align does not anticipate that
25     Federal will raise any of these other exclusions in opposition to Align's motion as none of them
       could possibly relieve Federal of its duty to defend. For example, the "Employment-Related
26     Practices" exclusion cited by Federal in its denial letter applies only to damages sustained by a
       "person" related to employment acts and omissions. The term "person" as used in a general
27     liability policy has been held to refer to a natural person. Thus, the employment exclusion has
       no possible application to defamation claims brought by OrthoClear which is, of course, a
28     corporation. *See Mirpad LLC v. California Ins. Guarantee Ass'n*, 132 Cal.App.4th 1058, 1070
       (2005).

1  ordinarily must defend the entire action.  *Buss v. Sup. Ct. (Transamerica Ins. Co.)*, 16

2  Cal.4th 35, 48 (1997).

3        Courts treat duty-to-defend issues as matters of law susceptible to resolution

4  through motions for summary judgment.  At summary stage, "[o]nce a prima facie

5  showing is made that the underlying action fell within coverage provisions, an insurer

6  may defeat a motion for summary judgment [on the duty to defend] only by producing

7  undisputed extrinsic evidence conclusively eliminating the potential for coverage under

8  the policy."  *Maryland Casualty Co. v. National American Ins. Co.*, 48 Cal.App.4th 1822,

9  1832 (1996); *see also Reese v. Travelers Ins. Co.*, 129 F.3d 1056, 1060 (9th Cir. 1997).

10  Or, stated another way, "the insured [seeking summary judgment on the duty to defend]

11  need only show that the underlying claim *may* fall within policy coverage; the insurer

12  must prove it *cannot*."  *Montrose,* 6 Cal.4th at 300 (emphasis in original).  "Any doubt as

13  to whether the facts establish the existence of the defense duty must be resolved in the

14  insured's favor."  *Id.* at 299-300.

15      **B.**    **OrthoClear's Allegations of Defamation Fell Squarely Within the**

16          **Insuring Agreements of Both the Primary and Umbrella Policies**

17        It is important to note at the outset that it is undisputed that OrthoClear's

18  allegations of defamation fell squarely within the insuring agreements of both the primary

19  and umbrella policies.  Both defined covered "**personal injury**" to include "injury . . .

20  caused by an offense of: . . . D.  electronic, oral, written or other publication of material

21  that: 1.  libels or slanders a person or organization . . . ."  *App. Ev.*, Exh. 5 at 353-354; and

22  Exh. 6 at 386.  The OrthoClear Cross-Complaint was replete with allegations that Align

23  and the individual cross-defendants defamed OrthoClear, and it asserted causes of action

24  for "Defamation (Libel)" and "Defamation (Slander)."  In its denial letter, Federal

25  conceded that such allegations and claims fell within the insuring agreements of its

26  policies.  *App. Ev.*, Exh. 8 at 408.   Instead, Federal's dispute about coverage rests

27  entirely on its assertion that its duty to defend is precluded by the Intellectual Property

28  Exclusions in both policies.  *Id.*

1  The decision by Justice Croskey in *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100

2  Cal.App.4th 1017 (2002) illustrates how policy exclusions apply in the context of

3  disputes about an insurer's duty to defend:

> An insurer may rely on an exclusion to deny coverage only if it
> provides *conclusive evidence* demonstrating that the exclusion
> applies. . . .  Thus, an insurer that wishes to rely on an exclusion
> has the burden of proving, through conclusive evidence, that the
> exclusion applies in all possible worlds.

7  *Id*. at 1038-39 (italics in original).

8  Furthermore, exclusions must be "conspicuous, plain, and clear," *Gray v. Zurich*

9  *Ins. Co.*, 65 Cal. 2d 263, 273 (1966), and must be "'construed narrowly and must be

10  proven by the insurer.'"  *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 16 (1995)

11  (quoting *Collin v. American Empire Ins. Co.*, 21 Cal.App.4th 787, 803 (1994)); *see also*

12  *North American Building Maintenance, Inc. v. Fireman's Fund Ins. Co.*, 137 Cal. App.

13  4th 627, 642 (2006) ("[T]he insurer bears the burden of bringing itself within a policy's

14  exclusionary clauses.").  Where an exclusion "does not plainly and clearly take away

15  what the CGL coverage patently confers . . . the exclusion must be interpreted in favor of

16  coverage." *MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 656 (2003).

17  Therefore, unless Federal is able to establish *conclusively* that both of its policies

18  contained an exclusion that eliminated all potential for coverage, Federal must be found

19  to have breached its duty to defend as a matter of law.  *See Anthem Elecs., Inc. v. Pac.*

20  *Employers Ins. Co.*, 302 F.3d 1049, 1056, 1060 (9th Cir. 2002); *Centillium*

21  *Communications, Inc.. v. Atl. Mut. Ins. Co.*, 528 F. Supp. 2d 940, 948, 951 (N.D. Cal.

22  2007).

23  **C.**   **The Intellectual Property Exclusion in the Primary Policy Did Not**

24      **Eliminate All Potential for Covered Liability**

25  The Intellectual Property Exclusion in Federal's primary policy provided:

> This insurance does not apply to any actual or alleged . . .
> **personal injury** arising out of, giving rise to or in any way
> related to any actual or alleged:

28

1      -      assertion; or

2      -      infringement or violation;

3      by any person or organization (including any **insured**) of any
       **intellectual property law or right**, regardless of whether this
4      insurance would otherwise apply to all or part of any such
       actual or alleged injury or damage in the absence of any such
5      actual or alleged assertion, infringement or violation.

6   *App. Ev.*, Exh. 5 at 340.

7         The primary policy defined the phrase "**intellectual property law or right**" to

8   include, *inter alia*, patents and trade secrets.

9         For the Intellectual Property Exclusion to negate Federal's duty to defend, it must

10  be proven to apply "in all possible worlds." *Atlantic Mut. Ins. Co.*, 100 Cal.App. at 1039.

11  As explained below, however, the policy's Intellectual Property Exclusion does  not

12  apply to all of the defamatory publications alleged in the OrthoClear Cross-Complaint.

13  The allegations of defamatory publications giving rise to OrthoClear's injuries fell into

14  four separate categories, as follows:

15        (1)    Defamatory publications <u>related only</u> to intellectual

16               property laws or rights;

17        (2)    Defamatory publications <u>related to both</u> intellectual

18               property laws or rights and to non-intellectual property

19               matters;

20        (3)    Defamatory publications <u>not related</u> to intellectual

21               property laws or rights; and

22        (4)    Defamatory publications <u>only potentially related</u> to

23               intellectual property laws or rights.

24        Although the exclusion eliminated coverage for injury caused by publications in

25  category one (*i.e.*, publications related only to intellectual property laws or rights), the

26  exclusion did not eliminate the potential that injuries caused by publications in categories

27  two, three and four would be covered by Federal's policy.

28  ///

## 1. Category One: Defamatory Publications <u>Related Only</u> to Intellectual Property Rights

The OrthoClear Cross-Complaint alleged certain publications of defamatory statements related only to intellectual property rights.  For example, at paragraph 37, OrthoClear alleged that on January 31, 2005, an Align employee called a former Align employee and made statements that "implied that Align's intellectual property had been stolen." *App. Ev.*, Exh. 2 at ¶37.  As another example, at paragraph 44, OrthoClear alleged that during a February 3, 2005 investor conference, Align executives "accused OrthoClear of improperly gaining access to and using Align's trade secrets," and stated that OrthoClear had "'been working to copy and circumvent the company's [Align's] intellectual property.'"  *Id.* at ¶44.  Because any injury to OrthoClear resulting from these publications would have been caused by, or at least related to, the actual or alleged assertion, infringement, or violation of intellectual property rights, the Intellectual Property Exclusion would apply to preclude coverage for such injury.

## 2. Category Two: Defamatory Publications <u>Related to Both</u> Intellectual Property Rights and Non-Intellectual Property Matters

The OrthoClear Cross-Complaint also alleged "mixed content" publications, *i.e.* publications whose content only partly related to intellectual property rights.  For example, at paragraph 33, OrthoClear described a January 31, 2005 letter issued by Align's Executive Management Team which implied that (i) "OrthoClear's product was 'merely a copycat' that infringed on Align's patent," (ii) OrthoClear's founders had "violated noncompetition and nonsolicitation agreements," (iii) "OrthoClear's sources of funding were suspect," and (iv) "OrthoClear's stock options granted to its employees would not be valuable."  *Id.* at ¶33.  As can be seen, this January 31, 2005 letter is a "mixed-content" publication containing statements that potentially caused OrthoClear to

suffer a variety of different injuries.[5]  Although some of the alleged statements contained
in this publication potentially caused injury arising out of or relating to the assertion,
infringement or violation of intellectual property rights (*e.g.*, the statement that
OrthoClear's product is a "copycat" and infringes Align's patent), others statements just
as clearly did not (*e.g.*, the statement that OrthoClear's sources of funding were suspect).
Another example of a "mixed-content" publication is set forth at paragraph 85, where
OrthoClear describes a letter from Align's President dated February 4, 2005, in which he
is alleged to have stated that "Align intends to take legal action against those involved in
contract violations, patent infringement, and unfair trade practices." *Id.* at ¶85.  This
publication contains statements related to intellectual property (*e.g.*, patent infringement),
and other statements that, at least potentially, are not (*e.g.*, contract violations).  The
exclusion's application to only some of the alleged injuries caused by these mixed
content publications was insufficient to negate Federal's duty to defend.  *See KLA-Tencor
Corp*, 2003 U.S. Dist. LEXIS 10456 (intellectual property exclusion held to apply only to
disparaging statement regarding infringement of a patent, not to other disparaging
statements).

### 3.    Category Three:  Defamatory Publications <u>Not Related</u> to Intellectual Property Rights

The OrthoClear Cross-Complaint also alleged the publication of defamatory
statements, <u>none of which were related to intellectual property rights</u>.  For example, at
paragraph 35, OrthoClear described a phone call from an Align employee to a former
Align employee wherein she told her former colleague that she "'was being misled'" and
that "'she was being made false promises.'" *App. Ev.*, Exh. 2 at ¶35.  As another

---

[5]  For example, the statement that OrthoClear infringed Align's patents was of the type
that would cause injury for which damages are presumed.  *See Slaughter v. Friedman*, 32 Cal. 3d
149, 153 (1982) ("A statement is libelous 'per se' when on its face the words of the statement
are of such a character as to be actionable without a showing of special damage.").  In contrast,
with respect to Align's statements regarding OrthoClear's stock values, OrthoClear could only
recover for injury as measured by special damages. *See Downing v. Abercrombie & Fitch*, 265
F.3d 994, 1010 (2001) (applying California law).

example, at paragraph 53, OrthoClear described a February 5, 2005 memorandum issued by Align in which "Align grossly misrepresented the value of the stock options OrthoClear had promised," implied that OrthoClear would never go public, would not survive litigation with Align, and would never become profitable. *Id*. at ¶53.  As yet another example, at paragraph 83, OrthoClear alleged that on dates unspecified, Align and its key management "made deliberate and wrongful public statements that OrthoClear has 'recruited its entire sales force' and 'unlawfully' solicited Align employees, when they knew such statements to be false." *Id.* at ¶ 83.  None of these Category Three defamatory publications caused injury relating to the assertion, infringement or violation of an intellectual property right.  As such, the Intellectual Property Exclusion did not excuse Federal's duty to defend.  *See KLA-Tencor, supra*.

### 4.    Category Four:  Defamatory Publications <u>Only Potentially Related</u> to Intellectual Property Rights

The OrthoClear Cross-Complaint also alleged publications of defamatory statements that may or may not have related to intellectual property rights.  For example, in its "Summary of Action," OrthoClear alleged that Align "defamed OrthoClear and its principals among the orthodontic and investment community."  *App. Ev.*, Exh. 2 at p. 1, ln. 22-23 and 25-26.  The full and precise content of these alleged defamatory publications was not described in OrthoClear's Cross-Complaint.  Nor was it alleged when these publications occurred, who made them, or who heard or read them.  Therefore, additional facts were required before Federal could determine whether the alleged injuries caused by these publications fell within its Intellectual Property Exclusion.  Because Federal denied Align a defense without resolving the factual issues upon which application of the exclusions hinged, it necessarily breached its duty to defend.  *See Mirpad, LLC v. California Ins. Guarantee Ass'n*, 132 Cal. App. 4th 1058, 1068 (2005) ("If coverage depends on an unresolved dispute over a factual question, the very existence of that dispute would establish a possibility of coverage and thus a duty to defend."); *see also Dogloo, Inc. v. Northern Ins. Co.*, 907 F. Supp. 1383, 1391 (C.D. Cal.

1    1995) ("Where the application of an exclusion is only a possibility, the duty to defend

2    continues.").

3        **D.**     **The Intellectual Property Exclusion in the Umbrella Policy Is Even**

4                **Narrower Than the Exclusion in the Primary Policy; *A Fortiori*, It Did**

5                **Not Eliminate A Potential for Covered Liability**

6        As a preliminary matter, Federal's umbrella policy does not provide coverage for

7    loss for which there is underlying insurance.  Therefore, if the Court finds that Federal

8    owed a duty to defend Align under the terms of its primary policy, discussed above, then

9    the umbrella policy would not apply.

10       Federal's umbrella policy contained a different version of the Intellectual Property

11   Exclusion than the one appearing in its primary policy.  It read as follows:

12           This insurance does not apply to any actual or alleged <u>liability

        or loss, cost or expense</u> arising out of, giving rise to or in any

13           way related to any actual or alleged:

14               -        assertion; or

15               -        infringement or violation

16           by any person or organization (including any **insured**) or (sic.)

        any **intellectual property law or right**, regardless of whether

17           this insurance would otherwise apply to all or part of any such

        actual or alleged injury or damage in the absence of any such

18           actual or alleged assertion, infringement or violation.

19   *App. Ev.*, Exh. 6 at 393.  (Underscore added).

20       Unlike the version of this exclusion appearing in the primary policy, the

21   introductory language of this modified version refers to actual or alleged "liability or loss,

22   cost or expense" instead of actual or alleged "personal injury."  Thus, for this modified

23   version of the Intellectual Property Exclusion to apply, an insured's "<u>liability or loss, cost

24   or expense</u>" must arise from or relate to the "assertion," "infringement" or "violation" by

25   any person of an intellectual property law or right.  In contrast, the

26   primary policy's version requires that a claimant's "<u>personal injury</u>" be so related.  *App.*

27   *Ev.*, Exh. 5 at 340.

28   ///

If anything, this modification further narrows the scope of the exclusion since each of the individual Align defendants' alleged "liability" would have extended only to defamatory publications that he or she was alleged to have made or authorized. For example, the OrthoClear Cross-Complaint alleged that on dates unspecified, Align and its key management "made deliberate and wrongful public statements that OrthoClear has 'recruited its entire sales force' and 'unlawfully' solicited Align employees, when they knew such statements to be false." *App. Ev.*, Exh. 2 at ¶83. This allegation potentially exposed members of Align's key management, some of whom were individually named cross-defendants, to "liability" for this publication. Furthermore, this may have been the only publication in respect of which they faced "liability" because it was the only publication they were alleged to have made or authorized. Because their potential "liability" for this distinct publication did not arise from or relate to the alleged "assertion" or "infringement" or "violation" by any person of an intellectual property law or right, <u>it would not be excluded</u>.

## IV. <u>CONCLUSION</u>

For the reasons stated above, Federal cannot prove conclusive application of the Intellectual Property Exclusions in either of its primary or umbrella policies. Consequently, it cannot prove that its duty to defend was excused. For this reason, Align respectfully requests partial summary judgment in its favor on the issue of Federal's duty to defend.

DATED: March 6, 2009                    OSBORNE & NESBITT LLP


By: <u>/s/ Gary W. Osborne</u>
     Gary W. Osborne
     Attorneys for Plaintiff ALIGN
     TECHNOLOGY, INC.