**E-FILED on** _11/25/09_____

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALIGN TECHNOLOGY, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>FEDERAL INSURANCE COMPANY, an Indiana corporation,<br><br>    Defendant. | No. C-08-04705 RMW<br><br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS, DENYING DEFENDANT'S MOTION TO STRIKE, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br>**[Re Docket Nos. 12, 14, 19, 31]** |

   Plaintiff Align Technology, Inc. ("Align") brings this suit against defendant Federal

Insurance Company ("Federal") asserting three causes of action relating to commercial liability

policies issued by Federal to Align: (1) breach of the duty to defend; (2) breach of the duty to

reimburse a settlement; and (3) tortious breach of the implied covenant of good faith and fair

dealing.   Federal moves to dismiss the third cause of action for failure to state a claim.  Federal also

moves to strike Align's prayer for punitive damages and for attorney's fees pursuant to *Brandt v.

Superior Court*, 37 Cal. 3d 813 (1985).  Finally, Federal moves for summary judgment or, in the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    alternative, partial summary judgment on all three causes of action.  Align opposes the motions.

2    Align moves for partial summary judgment on the first cause of action.  Federal opposes the motion.

3    The court heard argument on the motions on April 10, 2009.  The court has read the moving and

4    responding papers and considered the arguments of counsel.  For the reasons set forth below, the

5    court DENIES Federal's motion to dismiss and motion to strike, DENIES Federal's motion for

6    summary judgment, and GRANTS Align's motion for partial summary judgment.

## I. BACKGROUND

8         This case arises out of two insurance policies, a premises/operations liability policy and a

9    commercial excess and umbrella policy, issued by Federal to Align.  The parties dispute whether the

10   policies covered certain cross-claims asserted against Align by a third party in underlying state court

11   litigation.  In addition, Align alleges that Federal wrongfully and unreasonably failed to defend the

12   underlying lawsuit in breach of the implied covenant of good faith and fair dealing.

13        **A.**     **The Federal Policies**

14        Federal issued a premises/operations liability policy to Align, policy no. 3536-44-70, for the

15   period of April 1, 2004 to April 1, 2005 (the "primary policy").  Declaration of David Favre ("Favre

16   Decl.") ¶ 2; Appendix of Joint Exhibits, Joint Ex. 5.[1]  This policy has a per occurrence limit of $1

17   million and an aggregate limit of $2 million.  Joint Ex. 5 at 324.  The policy provides, in relevant

18   part:

19             we will pay damages that the insured becomes legally obligated to pay by reason of
20             liability:

21             •   imposed by law; or

22             •   assumed in an insured contract;

23             for advertising injury or personal injury to which this coverage applies.

24             This coverage applies only to such advertising injury or personal injury caused by an
               offense that is first committed during the policy period.

25   *Id.* at 327.

26

27   _____

[1] All references in this order to joint exhibits are to the corresponding exhibits in the Appendix of
Joint Exhibits.

28

ORDER DENYING DEFENDANT'S MOTION TO DISMISS, DENYING DEFENDANT'S MOTION TO STRIKE, DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT—No. C-08-04705 RMW
LJP/ter               2

1    In addition to the primary policy, Federal issued a commercial excess and umbrella policy to

2    Align, policy no. 7972-56-62, also effective for the period of April 1, 2004 to April 1, 2005 (the

3    "umbrella policy").  Favre Decl. ¶ 2; Joint Ex. 6.  This policy has an advertising injury and personal

4    injury aggregate limit of $5 million.  Joint Ex. 6 at 358.  Under its Umbrella Coverage B, the policy

5    provides that "we will pay, on behalf of the insured, loss because of liability: imposed by law; or

6    assumed in an insured contract; for advertising injury or personal injury to which this coverage

7    applies."  *Id.* at 363.  Such coverage applied to loss not covered by underlying insurance, i.e. the

8    primary policy.  *Id.*

9    Both policies provide that "we will have the right and duty to defend the insured against a

10   suit, even if such suit is false, fraudulent or groundless."  Joint Ex. 5 at 328; *accord* Joint Ex. 6 at

11   354.  Under both policies, "personal injury" includes

12       injury, other than bodily injury, property damage or advertising injury, caused by an
         offense of: . . . .

13

14       D.  electronic, oral, written or other publication of material that:

15           1.   libels or slanders a person or organization (which does not include
                 disparagement of goods, products, property or services); . . . .

16   Joint Ex. 5 at 354; Joint Ex. 6 at 386.

17   Both policies contain an exclusion entitled "Intellectual Property Laws or Rights."  In the

18   primary policy, the clause provides that

19       This insurance does not apply to any actual or alleged bodily injury, property
         damage, advertising injury or personal injury arising out of, giving rise to or in any
20       way related to any actual or alleged:

21       •   assertion; or

22       •   infringement or violation;

23       by any person or organization (including any insured) of any intellectual property law
         or right, regardless of whether this insurance would otherwise apply to all or part of
24       any such actual or alleged injury or damage in the absence of any such actual or
         alleged assertion, infringement or violation. . . .

25   Joint Ex. 5 at 340.  The wording of the exclusion in the umbrella policy is substantially the same,

26   with the only difference being that it refers to "liability or loss, cost or expense" rather than "bodily

27

28

ORDER DENYING DEFENDANT'S MOTION TO DISMISS, DENYING DEFENDANT'S MOTION TO STRIKE, DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT—No. C-08-04705 RMW
LJP/ter                                              3

United States District Court
For the Northern District of California

1  injury, property damage, advertising injury or personal injury." Joint Ex. 6 at 393-94.[2]  Both

2  policies contain the following definition:

3      Intellectual property law or right means any:

4      •   certification mark, copyright, patent or trademark (including collective or service
          marks);

5

6      •   right to, or judicial or statutory law recognizing an interest in, any trade secret or
          confidential or proprietary non-personal information;

7      •   other right to, or judicial or statutory law recognizing an interest in, any
          expression, idea, likeness, name, slogan, style of doing business, symbol, title,

8          trade dress or other intellectual property; or

9      •   other judicial or statutory law concerning piracy, unfair competition or other
          similar practices.

10  Joint Ex. 5 at 350-51; Joint Ex. 6 at 385.

11      **B.      The OrthoClear Litigation**

12      Align's core product is a system for straightening teeth through the use of clear removable

13  orthodontic appliances called "aligners." Compl. ¶ 14.  Through a series of patents on its system,

14  Align has acquired and maintained a share of the market for clear removable orthodontic aligners,

15  which it markets directly to dentists and orthodontists. *Id.*  In 2005, several former Align employees

16  founded OrthoClear, Inc. ("OrthoClear") to manufacture and market a line of clear removable

17  orthodontic aligners in direct competition with Align's system. *Id.* ¶ 15.

18      In February 2005, Align initiated a lawsuit against OrthoClear in San Francisco Superior

19  Court entitled *Align Technology, Inc. v. OrthoClear, Inc., et al.*, case number CGC-05-438361 (the

20  "underlying action").  Joint Ex. 1.  The complaint asserted fifteen causes of action, including unfair

21  competition in violation of Cal. Bus. & Prof. Code § 17200, misappropriation of trade secrets,

22  breach of contract, common law unfair competition, intentional interference with economic

23  advantage, conversion, unjust enrichment, and civil conspiracy. *Id.*  It summarized the action as

24  arising out of former Align employees' attempt to "unlawfully utilize Align's intellectual property,

25  confidential information and employees to start a competing dental device company." *Id.* at 2.  This

26

27  ───────────────

28  [2] Hereinafter both exclusions will be referred to collectively as the "IP exclusions".

ORDER DENYING DEFENDANT'S MOTION TO DISMISS, DENYING DEFENDANT'S MOTION TO STRIKE, DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT—No. C-08-04705 RMW
LJP/ter                                    4

1   litigation was one of five lawsuits and one International Trade Commission action initiated by Align

2   against OrthoClear that alleged such conduct.  Compl. ¶ 16.

3          On February 15, 2005, OrthoClear and several individual defendants in the underlying action

4   brought a cross-complaint against Align (the "Cross-Complaint").  Joint Ex. 2.  The Cross-

5   Complaint asserted seventeen causes of action, including unfair competition in violation of Cal. Bus.

6   & Prof. Code § 17200, common law unfair competition, intentional interference with prospective

7   economic advantage, defamation (libel), defamation (slander), and breach of contract.  *Id.*  The

8   Cross-Complaint alleged that Align had

9          embarked on a deliberate strategy to destroy OrthoClear . . . before its first sale was
       ever undertaken.  This strategy manifested itself in a pattern of misconduct, of which
10     the Align lawsuit itself is but a small part.  Align's misconduct encompasses
       threatening employees that they would be sued personally and destroyed financially if
11     they joined OrthoClear, holding a press conference in which Align defamed the
       founding members of OrthoClear, instituting the present lawsuit to preclude
12     competition slow [sic] an emerging company from entering the marketplace, and
       interfering with potential investors interested in OrthoClear.

13  *Id.* ¶ 30.  Under the fourth cause of action for defamation (libel), the Cross-Complaint alleged that

14  Align had published defamatory statements in writing "to other Align employees and the general

15  public about the OrthoClear founders, OrthoClear employees and [Align founder] Chishti."  *Id.* ¶

16  105.  Under the fifth cause of action for defamation (slander), the Cross-Complaint alleged that

17  "defamatory oral statements about the OrthoClear Parties were communicated to other Align

18  employees and the general public."  *Id.* ¶ 110.  Under both causes of action, the Cross-Complaint

19  alleged that the "statements were defamatory on their face because they charged the OrthoClear

20  Parties with a crime."  *Id.* ¶¶ 107, 112.

21         The Cross-Complaint alleged a number of communications made by Align, including the

22  following:

23         •   On or around January 31, 2005, an email was sent by Align's Executive Management

24             Team to Align's sales representatives which posed a series of questions implying that

25             "(a) OrthoClear's product was 'merely a copycat' that infringed on Align's patents, (b)

26             OrthoClear could not possibly compete lawfully with Align and that its founders had

27             violated noncompetition and nonsolicitation agreements, (c) OrthoClear's sources of

28

funding were suspect, and (d) OrthoClear's stock options granted to its employees would not be valuable." *Id.* ¶ 33.

• On February 2, 2005, two days after she resigned from Align, a former Align sales employee was called by Align's Director of Clinical Education who told her that she "'was being misled' and that she 'needed to take her letter to an attorney because she was being made false promises.'" *Id.* ¶ 35.

• Upon the filing of the underlying action, Align issued a press release and held an investor conference call which was accessible to the public. *Id.* ¶ 42-43. During the call, Align's General Counsel "insinuated that unidentified OrthoClear representatives are bound by non-competition agreements with Align . . . giving no indication that, in fact, no former Align executive was bound by a non-compete, and Align had released Chishti from the only non-competition agreement Align had with anyone associated with OrthoClear just three months before." *Id.* ¶ 43. In addition, "Align executives accused OrthoClear of improperly gaining access to and using Align's trade secrets" and the General Counsel "state[d] that OrthoClear's actions would quite likely represent criminal conduct." *Id.* ¶ 44.

• On or around February 5, 2005, Align issued a memorandum to its non-management employees which "grossly misrepresented the value of the stock options OrthoClear had promised . . . . [and] implied that OrthoClear would never go public, would not survive litigation with Align, and would never become profitable." *Id.* ¶ 53. The memorandum "specifically maligned Chishti's track record during his tenure at Align." *Id.* ¶ 54 & Ex. 7 ("Will the company achieve profitability? (Zia [Chishti] never achieved this at Align).").

• On unspecified dates, "as part of its strategy to malign OrthoClear and all associated with it, Align . . . made deliberate and wrongful public statements that OrthoClear has 'recruited its entire sales force' and 'unlawfully' solicited Align employees, when they knew these statements were false." *Id.* ¶ 83.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS, DENYING DEFENDANT'S MOTION TO STRIKE, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT—No. C-08-04705 RMW
LJP/ter

Align settled all of its litigation with OrthoClear in October 2006.  Federal's RJN, Ex. B, C.[3]
The settlement terms included: a one-time payment of $20 million from Align to OrthoClear;
transfer and assignment of all OrthoClear intellectual property to Align; an agreement by OrthoClear
to no longer compete with Align; and a mutual release of all claims related to OrthoClear or any
pending litigation.  *Id.*  All of the pending lawsuits, including the underlying action, were dismissed
with prejudice.  *Id.*

### C.      Tender of Defense and Federal's Refusal to Defend

On February 17, 2005, Align tendered the Cross-Complaint to Federal for a defense.
Declaration of Randal Golden ("Golden Decl.") ¶ 6; Favre Decl. ¶ 3.  On February 18, 2005, claims
examiner David Favre wrote a letter to Align acknowledging the assignment of the claim and
requesting a copy of the underlying lawsuit.  Favre Decl. ¶¶ 1, 4; Joint Ex. 7.  A copy of Align's
complaint in the underlying action was subsequently provided to Federal for review.  Favre Decl.
¶ 4.

On March 10, 2005, Federal sent a coverage declination letter to Align.  Golden Decl. ¶ 6;
Favre Decl. ¶ 5; Joint Ex. 8.  The letter summarized the underlying action and specifically noted the
libel and slander causes of action.  Joint Ex. 8 at 404-06, 408.  With respect to the primary policy,
the letter then stated:

> Although we acknowledge these causes of action that fall within the "personal injury"
> definition, part of the allegations and damages sought relate to the alleged
> misappropriation of confidential and/or trade secret rights held by Align as well as
> unfair competition or similar practices.  This is relevant since the policy contains the
> "Intellectual Property Laws Or Rights" exclusion that operates to preclude coverage
> in its entirety.

*Id.* at 408.  The letter went on to list "other relevant exclusions."  *Id.*  The letter similarly denied
coverage under the umbrella policy.  *Id.* at 411-12.

---

[3]  Federal requests that this court take judicial notice of certain filings with the SEC and of a
stipulation filed by Align and OrthoClear in the underlying action.  Federal's request is granted.  *See
Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take
judicial notice of court filings and other matters of public record."); *Dreiling v. Am. Express Co.*,
458 F.3d 942, 946 n.2 (2006) (noting SEC filings are subject to judicial notice).

ORDER DENYING DEFENDANT'S MOTION TO DISMISS, DENYING DEFENDANT'S MOTION TO STRIKE, DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT—No. C-08-04705 RMW
LJP/ter                                                          7

United States District Court
For the Northern District of California

### D.      Allegations of Federal's Bad Faith

In its complaint, Align asserts a cause of action for tortious breach of the implied covenant of good faith and fair dealing.  Compl. ¶¶ 36-40.  This cause of action is the subject of Federal's motion to dismiss.  Align alleges that Federal conceded that the slander and libel claims fell within the policies' definitions of "personal injury" but then misrepresented that the IP exclusions eliminated any possibility for covered liability.  *Id.* ¶ 24.  Align further alleges that "Federal was fully aware [that] none of the exclusions it cited came even remotely close to eliminating the potential for coverage which was clearly evident on the face of OrthoClear's Cross-Complaint," since "[m]any of the alleged statements had nothing whatsoever to do with intellectual property rights." *Id.* ¶ 25. Nonetheless, Federal "[w]rongfully and unreasonably denied a duty to defend in conscious disregard of California insurance law and Align's rights."  *Id.* ¶ 38.  Federal also "[f]ailed to undertake any meaningful investigation of Align's defense tender."  *Id.*  Align alleges that

> Federal made a calculated decision to wrongfully deny Align's claim for a defense, and gamble that its denial would go unchallenged.  Federal intentionally denied Align's insurance claim despite knowledge of its coverage obligations, and acted with an intent to enrich itself while injuring and harming Align.  Federal's conduct in this matter satisfies the statutory grounds of "oppression, fraud or malice" so as to justify an award of punitive damages in order to punish it and to deter such conduct in the future.

*Id.* ¶ 40.  Align's prayer for relief includes attorney's fees pursuant to *Brandt v. Superior Court*, 37 Cal. 2d 813 (1985), and punitive damages pursuant to Cal. Civ. Code § 3294.  *Id.* at 10.

## II. ANALYSIS

Pending before this court are four motions: (1) Federal's motion to dismiss the third cause of action; (2) Federal's motion to strike the prayer for attorney's fees and punitive damages; (3) Federal's motion for summary judgment or, in the alternative, partial summary judgment; and (4) Align's motion for partial summary judgment.

### A.      Federal's Motion to Dismiss and Motion to Strike

Federal moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Align's third cause of action (Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing) on the grounds that Align fails to allege sufficient facts to recover against Federal.  Federal also moves pursuant to Fed.

United States District Court
For the Northern District of California

R. Civ. P. 12(f) to strike Align's prayer for attorney's fees and punitive damages because such damages are improper if Align's bad faith claim is dismissed. Align argues that it has satisfied its pleading burden with respect to its third cause of action and its prayer for related damages should not be stricken.

### 1.    Legal Standards

Fed. R. Civ. P. 8(a) requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of such pleadings. In evaluating a motion to dismiss under Rule 12(b)(6), the court must consider whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal under Rule 12(b)(6) is proper when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). Where the heightened Rule 9(b) pleading standard for fraud or mistake does not apply, the complaint need only satisfy the Rule 8(a) notice pleading standard to survive a Rule 12(b)(6) dismissal. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1102-03 (2008).

Fed. R. Civ. P. 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike is appropriate to address requested relief, such as punitive damages, when such relief is not recoverable as a matter of law. *Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D. Cal. 2005) (citing 2 Schwarzer, Tashima & Wagstaffe, *Cal. Practice Guide: Fed. Civil Procedure Before Trial* (2005) Attacking the Pleadings, ¶¶ 9-389, 9-390, p. 9-97).

### 2.    Sufficiency of Align's Allegations

In order to establish a breach of the implied covenant of good faith and fair dealing in the denial of coverage context, the plaintiff must show that (1) benefits due under the policy were withheld, and (2) the reason for withholding benefits was "unreasonable or without proper cause." *Love v. Fire Ins. Exch.*, 221 Cal. App. 2d 1136, 1151 (1990); *see Neal v. Farmers Ins. Exch.*, 21 Cal.

United States District Court
For the Northern District of California

1  3d 910, 920 (1978).  The mere denial of benefits does not establish bad faith.  *Cal Shoppers v. Royal*

2  *Globe Ins. Co.*, 175 Cal. App. 3d 1, 15 (1985) (citing *Hanson v. The Prudential Ins. Co. of America*,

3  772 F.2d 580, 584 (9th Cir. 1985)).  Align has alleged that it was entitled to coverage given that the

4  Cross-Complaint asserted causes of action for libel and slander and Federal conceded that these fell

5  within its policies' "personal injury" definitions.  Align has also alleged that Federal acted

6  unreasonably in denying coverage because it knew that the exclusions did not eliminate the potential

7  for coverage, and that Federal acted with an intent to injure and harm Align.  These allegations are

8  sufficient to satisfy the pleading requirements of Rule 8(a).

9  Under *Brandt v. Superior Court*, 37 Cal.3d at 817, an insurer's tortious breach of the implied

10  covenant of good faith and fair dealing entitles the insured to recover for the expense of retaining an

11  attorney to obtain the benefits due under a policy.  Since Align's allegations are sufficient to support

12  a cause of action for tortious breach, they are sufficient to show that *Brandt* fees may be recoverable.

13  Cal. Civ. Code § 3294 permits the recovery of punitive damages if the defendant is guilty of

14  "oppression, fraud or malice."  Under the federal pleading standards, a plaintiff may rely on

15  conclusory averments of malice or fraudulent intent to plead the mental state required by § 3294.

16  *Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1019 (S.D. Cal. 2000) (collecting cases).  The *Clark*

17  court found sufficient the plaintiff's allegation that "Allstate intentionally denied Plaintiff's insurance

18  claim despite knowledge of its coverage obligations, and that it acted with an intent to injure

19  Plaintiff."  *Id.* at 1020.  Align has made the same allegations in this case.  Thus, Align's allegations

20  are sufficient to support a prayer for punitive damages.

21  For the foregoing reasons, Federal's motion to dismiss and motion to strike are denied.

22  **B.     Motions for Summary Judgment and Partial Summary Judgment**

23  Federal moves for summary judgment or, in the alternative, partial summary judgment on all

24  three causes of action.  Federal argues that the clear language of the IP exclusions eliminates all

25  possibility of coverage and consequently it had no duty to defend the underlying action or to

26  reimburse Align's settlement.  Furthermore, Federal argues that because its denial of coverage was

27  based on a genuine issue as to its liability under its policies, it did not act in bad faith as a matter of

28

ORDER DENYING DEFENDANT'S MOTION TO DISMISS, DENYING DEFENDANT'S MOTION TO STRIKE, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT—No. C-08-04705 RMW
LJP/ter                                                                                    10

**United States District Court**
For the Northern District of California

law.  Align moves for partial summary judgment that Federal had a duty to defend the underlying action and that Federal breached that duty.  Align argues that at least some of the injuries pleaded in the Cross-Complaint were unrelated to intellectual property and thus were not excluded from coverage under the IP exclusions.  In addition, Align opposes summary judgment on the bad faith claim pursuant to Fed. R. Civ. P. 56(f), arguing that it has not had an opportunity for discovery.

### 1.    Legal Standards

### a.    Summary Judgment

Summary judgment is proper where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The burden is initially on the moving party to show that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the nonmoving party bears the burden of proof at trial, the moving party may discharge its burden by pointing out "an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the initial burden has been met, the burden shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).  Alternatively, a party opposing summary judgment may "show[] by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(f).

A request for additional discovery pursuant to Rule 56(f) must identify the specific facts that further discovery would reveal and why those facts would preclude summary judgment. *See Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).  However, less specificity is required when the parties have not had an opportunity for discovery. *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 774 (9th Cir. 2003) ("[W]here . . . no discovery whatsoever has taken place, the party making a Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid.").

### b.    Rules of Insurance Policy Interpretation

The interpretation of an insurance contract is a question of law. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995).  "While insurance contracts have special features, they are still

**United States District Court**
For the Northern District of California

1   contracts to which the ordinary rules of contractual interpretation apply.  The fundamental goal of

2   contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the West v.*

3   *Superior Court*, 2 Cal. 4th 1254, 1265 (1992) (citations omitted). "Such intent is to be inferred, if

4   possible, solely from the written provisions of the contract." *AIU Ins. Co. v. Superior Court*, 51 Cal.

5   3d 807, 822 (1990) (citing Cal. Civ. Code § 1639).  "If contractual language is clear and explicit, it

6   governs." *Bank of the West*, 2 Cal. 4th at 1264.  In reading contractual language, "the words of the

7   policy are to interpreted according to their ordinary meaning, 'i.e., according to the plain meaning

8   which a layperson would ordinarily attach to them.'"  *Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89

9   F.3d 618, 626 (9th Cir. 1996) (quoting *Chatton v. Nat'l Union Fire Ins. Co.*, 10 Cal. App. 4th 846,

10  853 (1992)).  When policy language is not clear, "it must be read in conformity with what the insurer

11  believed the insured understood thereby at the time of formation and, if it remains problematic, in

12  the sense that satisfies the insured's objectively reasonable expectations." *Buss v. Superior Court*, 16

13  Cal. 4th 35, 45 (1997) (citations omitted).

14         Exclusionary clauses in an insurance contract are interpreted narrowly against the insurer.

15  *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94, 101 (1973).  In order to effectively

16  exclude coverage, an exclusionary clause must be "conspicuous, plain and clear." *MacKinnon v.*

17  *Truck Ins. Exch.*, 31 Cal. 4th 635, 639 (2003).  If "the exclusion does not plainly and clearly take

18  away what the . . . coverage provision patently confers," then "the exclusion must be interpreted in

19  favor of coverage." *Id.* at 655-56.

20               **2.      Duty to Defend**

21         Under California law, an insurer owes a broad duty to defend its insured against claims that

22  create a potential for indemnity.  *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993).

23  The duty to defend is determined from the policy, the complaint, and all facts known to the insurer.

24  *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993).  In examining the complaint,

25  the focus is not on "the technical legal cause of action" but rather on the potential for liability as

26  revealed by the facts alleged.  *CNA Cas. of California v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598,

27  606-07 (1986).  To trigger the defense duty, there need be nothing more than a "bare potential or

28

1    possibility of coverage." *Montrose*, 6 Cal. 4th at 300 (internal quotations omitted).  Moreover, in a

2    "mixed" action where some claims are potentially covered and others are not, the insurer has a duty

3    to defend the action in its entirety.  *Buss*, 16 Cal. 4th at 47-48.  Thus, to prevail on this issue, "the

4    insured must prove the existence of a *potential for coverage*, while the insurer must establish *the*

5    *absence of any such potential*."  *Montrose*, 6 Cal. 4th at 300.  Where an insurer seeks to defeat

6    coverage by relying on an exclusion, it must show, "through conclusive evidence, that the exclusion

7    applies in all possible worlds."  *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017,

8    1038-39 (2002).

9         Here, in its coverage denial letter, Federal acknowledged that some of the claims in the

10    Cross-Complaint fell within the policy's definition of covered "personal injury."  Thus, the only

11    question is whether the IP exclusions eliminate the possibility of coverage as to all of OrthoClear's

12    allegations of defamation.[4]

13                      **a.     *KLA-Tencor* and *Molecular Bioproducts***

14         Align urges this court to follow *KLA-Tencor Corp. v. Travelers Indemnity Company of*

15    *Illinois*, 2003 WL 21655097 (N.D. Cal. Apr. 11, 2003), and find that the IP exclusions do not apply

16    to defamatory statements that made no reference to intellectual property.  Federal places similarly

17    heavy reliance on *Molecular Bioproducts, Inc. v. St. Paul Mercury Insurance Co.*, 2003 WL

18    23198852 (S.D. Cal. July 9, 2003), in urging the court to find the IP exclusions preclude coverage

19    for any claim in a suit that also alleges violation of intellectual property rights.

20         In *KLA-Tencor*, the relevant exclusion clause provided that the policy did not apply to

21         "personal injury" . . . arising out of or directly or indirectly related to the actual or
          alleged publication or utterances of oral or written statements, . . . which is claimed as
22         an infringement, violation or defense of [intellectual property laws].

23

24

─────────────────

25    [4] Align also argues that allegations in the Cross-Complaint exposed it to liability for an abuse of
      process claim, which falls under the primary policy's coverage for malicious prosecution.  However,
26    Align fails to point to any allegations other than OrthoClear's allegation that Align accused it of
      patent infringement and theft of trade secrets without any knowledge about its products.  As such
27    allegations fall squarely within the IP exclusions, being related to the alleged infringement of
      intellectual property rights, they cannot form a basis for Federal's duty to defend.
28
      ORDER DENYING DEFENDANT'S MOTION TO DISMISS, DENYING DEFENDANT'S MOTION TO STRIKE, DENYING
      DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
      JUDGMENT—No. C-08-04705 RMW
      LJP/ter                                    13

2003 WL 21655097 at *2.  The court interpreted the clause as meaning "if a third-party's injury is related to the insured's statements, and those statements are claimed to be an infringement, violation or defense of a given right or law, they are excluded." *Id.* at *5.

> In *Molecular Bioproducts*, the exclusion provided that there was no coverage for
>
> injury or damage . . . that result from any actual or alleged infringement or violation of the following rights or laws: Copyright. Patent. Trade dress. Trade name. Trade secret. Trademark. Other intellectual property rights or laws.
>
> Nor will [St. Paul] cover any other injury or damage . . . alleged in a claim or suit that also alleges any such infringement or violation.

2003 WL 23198852 at *1.  The court found that the "alleged in a claim" language was "clear and explicit and . . . , therefore, dispositive" because the counterclaims asserted against Molecular included claims for declaratory judgment of patent invalidity, i.e. of obtaining a patent in violation of the patent laws. *Id.* at *5.

Neither of these cases is controlling.  The language in the present IP exclusions is neither as narrow as the exclusion in *KLA-Tencor* nor as broad as the exclusion in *Molecular Bioproducts*. Unlike in *KLA-Tencor*, the IP exclusions do not explicitly require that the defamatory statements relate to intellectual property.  On the other hand, the primary policy's language still focuses on *injury* related to the assertion, infringement or violation of intellectual property rights.  This requires an examination of the alleged injury itself, whether in addition to or with disregard for the other claims in the litigation.  Thus, unlike in *Molecular Bioproducts*, a single intellectual property claim does not automatically disqualify the entire suit from coverage.

### b.    The IP Exclusions' "Regardless" Clause

Federal argues that all defamation in the Cross-Complaint is excluded from coverage by virtue of the "regardless" clause that appears in both IP exclusions.  Reading out the conditional language, the clause provides that the insurance does not cover excluded injury "regardless of whether this insurance would otherwise apply to all or part of any such . . . injury . . . in the absence of any . . . assertion, infringement or violation."

Federal asserts that this clause operates in much the same way as the "alleged in a claim" language in *Molecular Bioproducts*, i.e. if any injury in the lawsuit is related to intellectual property,

then all injury in the lawsuit is excluded.  Applied to the underlying action, Federal's interpretation would eliminate the possibility of coverage, since part of OrthoClear's defamation causes of action rely on alleged accusations of patent infringement, i.e. part of OrthoClear's injury is related to the alleged infringement of intellectual property rights.

The policy in *Molecular Bioproducts*, however, excluded all claims in a lawsuit also alleging intellectual property violations in very clear terms.  A comparison shows that Federal's language is significantly less clear:

| St. Paul's Policy in *Molecular Bioproducts* | Federal's Policy |
|---|---|
| [St. Paul will not] cover injury or damage or medical expenses that result from any actual or alleged infringement or violation of the following rights or laws: . . . .<br><br>*Nor will [St. Paul] cover any other injury or damage or medical expenses alleged in a claim or suit that also alleges any such infringement or violation.* | This insurance does not apply to any actual or alleged bodily injury, property damage, advertising injury or personal injury arising out of, giving rise to or in any way related to any actual or alleged:<br><br>•     assertion; or<br>•     infringement or violation;<br><br>by any person or organization (including any insured) of any intellectual property law or right, *regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation.* |

*Molecular Bioproducts*, 2003 WL 23198852 at *2; Joint Ex. 5 at 340 (emphasis added).  As discussed above, insurance policies are interpreted based on the ordinary understanding of a layperson.  *Stanford Ranch*, 89 F.3d at 626.  Moreover, exclusionary clauses are interpreted narrowly and must be "conspicuous, plain and clear."  *MacKinnon*, 31 Cal. 4th at 635; *State Farm v. Partridge*, 10 Cal. 3d at 101.  Under these standards, Federal's language does not put an insured reasonably on notice that Federal will not cover claims in a lawsuit whenever that lawsuit also includes a claim for intellectual property.  Thus, the "regardless" clause does not conclusively eliminate coverage for all of the claims in the Cross-Complaint.

1

### b.     "Unfair Competition"

2          Federal points out that its definition of "intellectual property law or right" includes "other

3   judicial or statutory law concerning piracy, unfair competition or other similar practices."  Federal

4   argues that this definition covers claims asserted under Cal. Bus. & Prof. Code § 17200, California's

5   unfair business practices statute.  Since both Align and OrthoClear asserted § 17200 claims against

6   each other, and the alleged defamation formed part of the basis for OrthoClear's claim, this would

7   mean all of the defamation is related to intellectual property laws as defined in the policy and is

8   covered by the IP exclusions.  Align argues that the only reasonable interpretation of "unfair

9   competition" as used in the policy is that it refers to the intellectual property tort of passing off,

10  which was not alleged by either party.

11         Many cases have interpreted the term "unfair competition" in *coverage* provisions as

12  referring to the common law tort of unfair competition, i.e. "passing off" one's goods as those of

13  another, rather than to conduct prohibited by unfair business practice statutes.  *See, e.g.*, *Bank of the*

14  *West*, 2 Cal. 4th at 1263; *Standard Fire Ins. Co. v. Peoples Church of Fresno*, 985 F.2d 446, 450

15  (9th Cir. 1993).  However, since the dominant theme of such cases is that the term must be

16  interpreted in context, *see, e.g.*, *Bank of the West*, 2 Cal. 4th at 1265 (rejecting an argument as

17  "probably correct as a matter of abstract philology, [but] defective as a matter of policy

18  interpretation because it disregards the context"), it would be inappropriate to simply import the

19  definition into Federal's policy, as Align asks this court to do.  For example, the court in *Standard*

20  *Fire* reached its conclusion that "unfair competition" required competitive injury only after

21  observing that "[t]he term 'unfair competition' is nestled within a group of torts in the advertising

22  injury provision which all involve disparagement or appropriation of another's name, style, identity,

23  or other forms of representation of products" but which did not extend to misrepresentation of one's

24  *own* products.  985 F.2d at 450.

25         Here, Federal used the term "unfair competition" in the context of defining an "intellectual

26  property law or right."  In full, the definition provides:

27         Intellectual property law or right means any:

28

- certification mark, copyright, patent or trademark (including collective or service marks);

- right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;

- other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or

- other judicial or statutory law concerning piracy, unfair competition or other similar practices.

Joint Ex. 5 at 350-51; Joint Ex. 6 at 385. Thus, the term "unfair competition" appears in the context of "piracy, unfair competition or other similar practices." "Piracy," when not referring to violence at sea, refers to "[t]he unauthorized and illegal reproduction or distribution of materials protected by copyright, patent, or trademark law." *Black's Law Dictionary* (8th ed. 2004). Similarly, the laws and rights listed in other bullet points all involve protection for expressions, ideas, likenesses, names, styles of doing business, trade dress, and so on—all forms of intellectual property that may be misappropriated. This is consistent with the common law tort of unfair competition, which includes "passing off" and analogous acts "by which a person exploits a competitor's reputation in the market." *Bank of the West*, 2 Cal. 4th at 1263 (citing Restatement (First) Torts §§ 711-743 (1938)).

In contrast, Cal. Bus. & Prof. Code § 17200 broadly defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." The provision "is designed to protect consumers against fraud and deceit as well as to protect competitors, and is broadly interpreted to bar *all* ongoing wrongful business activity *in any context* in which it appears." *People v. Dollar Rent-A-Car Sys., Inc.*, 211 Cal. App. 3d 119, 129 (1989) (citations omitted & emphasis added). To apply such a broad definition would stretch the term far beyond its context embedded within an exclusion for "intellectual property." Indeed, most of the offenses covered by Federal, including defamation, could be considered "wrongful business activity," so adopting Federal's definition would eviscerate coverage. "[T]he law does not countenance such a nullity, for to do so would disappoint the reasonable expectations of the insured, violat[ing] the general rules of construing insurance contracts[,] and most particularly exclusions, in favor of the insured." *SDR Co. v. Fed. Ins. Co.*, 196 Cal. App. 3d 1433, 1437 (1987).

1    Federal points out that the policies specifically refer to "judicial and *statutory* law," which it

2    argues refers to statutes like § 17200.  However, such language buried as it is in the definition of

3    "intellectual property right or law" is not sufficiently conspicuous, plain and clear to put Align on

4    notice that it was receiving essentially no coverage for any business activities.  *Cf. Saltarelli v. Bob*

5    *Baker Group Med. Trust*, 35 F.3d 382, 385, 387 (9th Cir. 1994) (finding exclusion was

6    unenforceable where insurer "chose to bury one of the plan's most significant provisions amidst

7    definitions").  At oral argument, Federal noted that its policies are issued in all fifty states and it

8    cannot be expected to list each relevant statute.  However, neither can it benefit from the fact that

9    California has chosen to adopt a particularly broad statutory definition of "unfair competition" when

10    that definition conflicts with the term's context and hence with the insured's reasonable expectation

11    of coverage.  The only reasonable interpretation of the phrase in context is that it refers to statutory

12    law to the extent it concerns piracy, common law unfair competition, and similar practices.  Thus,

13    some claims under § 17200 may trigger the exclusions, but the determination must be made based

14    on the factual allegations.  *See CNA Cas.*, 176 Cal. App. 3d at 606-07.

15                              **c.    OrthoClear's Allegations of Defamation**

16    Align classifies the allegations in the Cross-Complaint into four categories: (1) defamatory

17    publications related only to intellectual property rights, (2) "mixed content" publications relating to

18    both intellectual property rights and non-intellectual property matters, (3) publications unrelated to

19    intellectual property rights, and (4) publications only potentially related to intellectual property

20    rights.  Align argues that only the first category falls conclusively under the IP exclusions and thus

21    the remainder of the statements create a potential for liability that triggered the duty to defend.

22    Federal responds that, regardless of whether the alleged defamatory statements referred specifically

23    to intellectual property rights, all arose out of Align's dispute with OrthoClear, which was, at heart, a

24    dispute over intellectual property.  Specifically, Federal argues that all of Align's statements were

25    made in an attempt to protect its intellectual property from OrthoClear.  Thus, all of the statements

26    were "related" to intellectual property rights and were excluded by the terms of the policy.

27

28

1    It is difficult to find a single characterization of the dispute and then fit the alleged

2   defamation into that context because each party naturally denies the other's allegations.  It is true

3   that in the underlying action Align accused OrthoClear of stealing its confidential information.

4   However, Align would hardly admit that it made defamatory statements as part of an effort to

5   protect its intellectual property, for example to discourage its employees from joining OrthoClear

6   while in possession of Align's trade secrets.  At the same time, OrthoClear certainly accused Align

7   of improperly interfering with its recruitment of employees but denied that it was violating any

8   intellectual property laws.  Indeed, OrthoClear alleged that "Align launched this litigation while

9   admitting that it doesn't know what OrthoClear does and what it is alleged to have taken."  Joint

10   Ex. 2 at 31.  Thus, accepting Federal's argument would allow it to cobble together the most

11   favorable allegations from both parties and disregard the rest.  Such an approach defies the public

12   policy of strictly construing exclusionary clauses.  At best, the conflicting allegations might create a

13   factual issue as to whether injury from each statement was related to an alleged intellectual property

14   dispute.  Since a factual dispute does not completely eliminate the possibility of coverage, it does

15   not relieve Federal of its duty to defend.  *Mirpad, LLC v. California Ins. Guar. Ass'n*, 132 Cal. App.

16   4th 1058, 1068 (2005) ("If coverage depends on an unresolved dispute over a factual question, the

17   very existence of that dispute would establish a possibility of coverage and thus a duty to defend.").

18    The Cross-Complaint alleged that, in addition to accusing it of violating intellectual property

19   laws, Align was liable for defamation because, among other things, it accused OrthoClear of making

20   false promises to prospective employees, insinuated that former Align executives breached non-

21   competition agreements, maligned Chishti's management of Align, and accused OrthoClear of

22   recruiting its entire sales force and unlawfully soliciting its employees.  On their face, such alleged

23   statements bear no relation to the assertion of intellectual property rights.  Nor did OrthoClear allege

24   that these were part of any intellectual property dispute.  Rather, OrthoClear alleged that Align was

25   engaged in "a deliberate strategy to destroy OrthoClear . . . of which the Align lawsuit itself *is but a*

26   *small part*."  Joint Ex. 2 ¶ 30 (emphasis added).  Thus, based on the alleged facts, there is no

27   relationship between the injury caused by these statements and Align's conduct with respect to

28

United States District Court
For the Northern District of California

1  intellectual property rights.  *Cf. KLA-Tencor*, 2003 WL 21655097 at *6 (declining to infer, by virtue

2  of the plaintiff's ongoing patent litigation, that the plaintiff could *only* have made statements in

3  defense of its patent rights).

4   Because the IP exclusions do not conclusively apply to all of the alleged defamation in the

5  Cross-Complaint, Federal owed Align a duty to defend the lawsuit under the primary policy.

6  Federal breached that duty by declining coverage.

7       **3.**  **Duty to Reimburse**

8   Unlike the broad duty to defend, an insurer's duty to indemnify loss requires a claim that is

9  actually, rather than only potentially, covered and for which the indemnitee has actually sustained

10  liability or paid damages.  *Crawford v. Weather Shield Mfg., Inc.*, 44 Cal. 4th 541, 559 (2008);

11  *Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1112 n.8 (9th Cir. 2006).  Where

12  an insurer wrongfully fails to provide a defense and the insured then settles the claim, a reasonable

13  settlement made by the insured to terminate the underlying claim may be used as presumptive

14  evidence of the insured's liability on the underlying claim, and the amount of such liability.

15  *Isaacson v. California Ins. Guar. Ass'n*, 44 Cal. 3d 775, 791 (1988).

16   Here, Federal breached its duty to defend the underlying action, which Align ultimately

17  settled.  As discussed above, it is not clear from the record that none of the claims asserted against

18  Align was covered by Federal's policies.  Nor has it been shown that none of the settlement payment

19  to OrthoClear, which admittedly encompassed far more than the Cross-Complaint, was paid to settle

20  potentially covered claims.  Thus, there remains the possibility that some portion of the payment

21  went to settle claims covered by Federal's policies, and Federal is liable to Align for that amount.

22       **4.**  **Implied Covenant of Good Faith and Fair Dealing**

23   Federal argues that it is entitled to summary judgment on Align's bad faith claim because

24  there was a genuine issue as to its liability under the policy, and under such circumstances denial of

25  a claim is not unreasonable as a matter of law.  Align urges this court to deny summary judgment as

26  premature in order to allow Align to conduct discovery on its claim.  Align also argues that the

27  "genuine issue" doctrine is inapplicable.

28

ORDER DENYING DEFENDANT'S MOTION TO DISMISS, DENYING DEFENDANT'S MOTION TO STRIKE, DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT—No. C-08-04705 RMW
LJP/ter

Pursuant to Rule 56(f), Align submits an affidavit noting that this lawsuit is in its earliest stages, before initial disclosures and the start of discovery.  Affidavit of Gary W. Osborne ¶ 3.  Once able to conduct discovery, Align submits that it would seek to obtain a copy of Federal's "claim file" and "claim manual" in order to determine, among other things: (1) what investigation Federal conducted regarding non-IP content defamatory statements; (2) whether Federal obtained a legal opinion from inside or outside counsel regarding its duty to defend; (3) whether Align's claim was adjusted in accordance with Federal's claim manual and the Fair Claim Settlement Practices Regulations; and (4) whether Federal established any reserves on Align's claim.  *Id.* ¶ 4.  Federal argues that this fails to meet Align's burden under Rule 56(f) because "Mr. Osborne fails to state there is insufficient evidence to rule on Federal's motion at the present time."  Federal's Reply at 10:16-17.  The fact that no discovery has taken place is enough.  In arguing for summary judgment, Federal relies on its own claims examiner's assertion that he conducted an investigation.  Align has alleged that the investigation was inadequate as well as other unreasonable conduct by Federal.  Align should be allowed an "opportunity to pursue discovery relating to its theory of the case."  *Burlington*, 323 F.3d at 773 (noting that courts should grant Rule 56(f) motions "fairly freely" when summary judgment motions are filed early in litigation).

Federal also argues that the "genuine issue" rule precludes any need for further discovery.  As discussed above, a bad faith claim turns on whether the insurer's denial of coverage was reasonable.  *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2001).  "[A] court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability."  *Lunsford v. American Guar. & Liab. Ins. Co.*, 18 F.3d 653, 656 (1994).  Summary judgment may be awarded under the genuine issue rule where the insurer reasonably construes ambiguous language in its policy, but not where the insurer's interpretation is sufficiently "arbitrary or unreasonable" that a jury could conclude it was adopted in bad faith.  *Amadeo*, 290 F.3d at 1162 (citations omitted).  Taken as a whole, Federal's construction of its policy amounts to excluding any claim for unfair business practices under § 17200 as well as any other claims alleged in the same lawsuit (by applying its interpretation of the "regardless"

1   clause).  A jury could conclude that Federal's reading this result out of an exclusion for "intellectual

2   property laws or rights" was in bad faith, particularly if Align is able to prove its other allegations.

3   Thus, the "genuine issue" rule does not compel summary judgment in this case.

### III. ORDER

4

5       For the foregoing reasons, the court DENIES Federal's motion to dismiss the third cause of

6   action, DENIES Federal's motion to strike the prayer for punitive damages and *Brandt* fees,

7   DENIES Federal's motion for summary judgment or, in the alternative, partial summary judgment,

8   and GRANTS Align's motion for partial summary judgment.  The court finds that Federal owed

9   Align a duty to defend the underlying action and breached that duty.

DATED:      11/25/09

RONALD M. WHYTE
United States District Judge

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    **Notice of this document has been sent to:**

2    **Counsel for Plaintiff:**

3    Gary Wayne Osborne          gosborne@onlawllp.com

4
     **Counsel for Defendant:**
5
     Stephen Lynn Newton          efile@newtonremmel.com
6

7    Counsel are responsible for distributing copies of this document to co-counsel that have not
     registered for e-filing under the court's CM/ECF program.
8

9
     **Dated:**    _11/25/09_                         _____TER_____
10                                                    **Chambers of Judge Whyte**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28